Sucesión Suro, Demandantes y Apelantes, *v.* Sucesión Prado et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en un caso sobre declaración de inexistencia de contrato hipotecario y otros extremos.

No. 1022.—Resuelto en julio 29, 1914.

Prescripción de la Acción de Nulidad de Contratos—Contratos Existentes e Inexistentes.—La prescripción de cuatro años de la acción de nulidad de contratos establecida en el artículo 1268 del Código Civil Revisado sólo es aplicable, según el artículo 1267, a los contratos en que concurran los requisitos que expresa el artículo 1228, siempre que adolezcan de algunos de los vicios que los invalidan con arreglo a la ley, siendo aquellos requisitos, consentimiento de los contratantes, objeto cierto que sea materia del contrato, y causa de la obligación que se establezca.

EXCEPCIONES PREVIAS—ACEPTACIÓN DE LOS HECHOS DE LA DEMANDA.—Para dictar resolución sobre excepciones previas, sean éstas cuales fueren, se deben aceptar los hechos tales como se consignan en la demanda y como se desprenden de las alegaciones sin apartarse del sentido literal de éstas.

PATRIA POTESTAD DE LA MADRE—LEYES DE PARTIDAS.—De acuerdo con las Leyes de Partidas vigentes en Puerto Rico en el año 1879, la madre no tenía *patria potestad* sobre sus menores hijos, la cual competía únicamente al padre, según las Leyes 2 y 3, título 17, partida 4ª.

PRESCRIPCIÓN DE LA ACCIÓN DE NULIDAD DE CONTRATOS—PATRIA POTESTAD DE LA MADRE—INEXISTENCIA DEL CONTRATO.—La acción para anular un contrato de reconocimiento de crédito con hipoteca otorgado en Puerto Rico, en noviembre 29, 1879, en el cual una de las partes contratantes actuó en concepto de madre con *patria potestad* sobre sus hijos menores, no prescribe por el término de cuatro años que establece el artículo 1268 del Código Civil Revisado.

PRESCRIPCIÓN—ACCIÓN DE NULIDAD DE PROCEDIMIENTO EJECUTIVO—MENORES QUE NO FUERON PARTES EN EL JUICIO.—Tampoco prescribe por el transcurso de cuatro años la acción de nulidad de procedimiento ejecutivo, fundada en que los demandantes no fueron citados para el juicio, por más que esa acción no sea la establecida por el artículo 1477 de la antigua Ley de Enjuiciamiento Civil.

ID.—ACCIÓN REIVINDICATORIA.—Habiendo entrado en posesión los demandados de las fincas en litigio en los años 1887 y 1888 y tratando de reivindicar una participación dominical en las mismas, el término de treinta años que para la prescripción de acciones reales establece el artículo 1864 del Código Civil Revisado no ha transcurrido todavía.

PRESCRIPCIÓN ADQUISITIVA DEL DOMINIO—FRAUDE—MALA FE EN LA POSESIÓN.—Alegándose en la demanda fraude y mala fe en la posesión por parte le los demandados, el término necesario para adquirir el dominio por prescripción es de treinta años, el cual no ha transcurrido aun en este caso.

Los hechos están expresados en la opinión.

Abogados de los apelantes: Sres. *Juan Hernández López, Enrique Rincón, Rafael López Landrón* y *H. H. Scoville.*

Abogados de los apelados: Sres. *Alvarez Nava* y *Domínguez.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

En el mes de marzo del año próximo pasado, 1913, la Sucesión de Don Juan Suro produjo demanda ante la Corte de Distrito de San Juan, Sección 1ª., contra las Sucesiones de Doña Encarnación Prado, de Don Alonso del Río, y de Doña Joaquina Juliá, con súplica de que se dictara sentencia por la que se declare la nulidad *per se,* o inexistencia de una escritura de reconocimiento de deuda e hipoteca otorgada por

Doña Encarnación Prado a favor de Doña Joaquina Juliá en 29 de noviembre de 1879 ante el Notario Demetrio Jiménez y Moreno, en cuanto pueda perjudicar los derechos de la sucesión demandante; se haga extensiva la declaratoria de nulidad solicitada a los procedimientos seguidos para el cobro de dicho crédito hipotecario, con inclusión de la adjudicación de los bienes hipotecados a Doña Joaquina Juliá, de su inscripción en el Registro de la Propiedad de Arecibo, y de la venta de dichos bienes por Doña Joaquina Juliá a Don Alonso del Río; se decrete la división de la comunidad que en dichos bienes tiene la sucesión de Don Alonso del Río con la sucesión demandante, entregándose a ésta por la Sucesión de Don Alonso del Río la participación que le corresponda; se condena a los demandados a pagar a los demandantes la suma de $200,000 en concepto de frutos producidos y debidos producir por su participación antedicha en la comunidad y se condene también a los demandados al pago de costas, gastos y desembolsos, incluyendo la suma de $5,000 para remuneración de los servicios profesionales del abogado de los demandantes.

Los hechos consignados en la demanda como determinates de los pronunciamientos pedidos por sentencia, son los siguientes:

*Primero.* Don Juan Suro, causante de los demandantes, estaba casado con Doña Encarnación Prado y falleció abintestato por el año 1870.

*Segundo.* Durante su matrimonio procrearon Don Juan Suro y Doña Encarnación Prado a Gabriel y Joaquín Suro, sus únicos y universales herederos, de los cuales el Joaquín murió por el año 1911, habiendo sido declarados herederos del mismo su esposa Antonia Monserrat y su hija Pilar Suro Monserrat, siendo éstas las demandantes en unión de Gabriel Suro.

*Tercero.* Doña Encarnación Prado falleció por el año 1911 dejando por herederos además de los demandantes a su hijo Alfonso Prado, conocido por Alfonso Suro, heredero cono-

cido, y a John Doe y Richard Roe como herederos desconocidos, cuyos nombres son ficticios y ofrecen los demandantes sustituirlos por los verdaderos si aparecieren.

*Cuarto.* La Sucesión de Alonso del Río se compone de su viuda Hortensia de León; de su hijos María y Juan del Río, menores representados por su referida madre con *patria potestad;* de sus hijos mayores de edad, José, Josefa Belén y Maximina del Río León; y de Margarita y Rosa del Río y Buscai y Angel de Angel, como herederos de Carmen del Río y León.

*Quinto.* Habiendo fallecido Joaquina Juliá, y desconociéndose sus herederos, se hacen constar éstos con los nombres ficticios de John Doe y Richard Roe.

*Sexto.* Don Juan Suro, causante de los demandantes, era dueño en pleno dominio con títulos inscritos en el Registro de la Propiedad de Arecibo, de dos fincas rústicas, una de ellas radicada en el barrio de San Lorenzo, término municipal de Morovis, compuesta de 469 cuerdas, y la otra de 600 cuerdas radicada en el barrio de Morovis Norte, y dividida en dos predios, uno de 500 cuerdas y otro de 100, cuyas dos fincas de 469 cuerdas y 600 cuerdas respectivamente, se describen en la demanda.

*Séptimo.* En 29 de noviembre de 1879 Doña Encarnación Prado, esposa de Don Juan Suro y Juliá, titulándose albacea y curadora *ad litem* de Don Juan Suro Juliá (así dice la demanda), falsamente, por cuanto obedecía a gestiones de Don Alonso del Río, y además como madre de los menores hijos herederos de Don Juan Suro, pero sin obtener previa autorización judicial por causa de necesidad y utilidad para gravar sus bienes, compareció con Doña Joaquina Juliá por su propio derecho y por la sucesión de Don Juan Suro, ante el Notario Demetrio Jiménez y Moreno, reconociendo deber a Doña Joaquina Juliá en tal representación, la suma de $25,473.84, a saber, $8,675 por deuda de Don Juan Suro a favor del Sr. Borell, esposo de Doña Joaquina Juliá, garantizada con hipoteca, $3,300 por deuda del mismo Suro a Borell como fiador

y principal pagador, $4,319.09 por deuda de refacción de la Hacienda María a la sociedad Barreras y Castillo, $5,133.93, por intereses devengados, y $4,015.82 por más intereses. Y para garantizar a Doña Joaquina Juliá ese reconocimiento de cuentas, Doña Encarnación Prado, titulándose albacea y curadora *ad litem,* testamentaria de su finado esposo Juan Suro Juliá (así dice la demanda), y como madre con *patria potestad* sobre sus menores hijos, sin previa autorización de necesidad y utilidad hecha judicialmente, hipotecó por la expresada escritura de 29 de noviembre de 1879 los bienes de que se deja hecho mérito, únicos que quedaban provenientes de la sociedad de gananciales de Encarnación Prado con Juan Suro Juliá.

*Octavo.* Hacia los años de 1887–1888, Doña Joaquina Juliá siguió procedimiento ejecutivo contra Doña Encarnación Prado, viuda de Suro, en cobro del crédito hipotecario reconocido de $25,473.84, y sin citarse ni oirse a los herederos de Don Juan Suro Juliá, fueron adjudicados a Doña Joaquina Juliá los bienes hipotecados con excepción de ciertas parcelas de terreno que se alegaba habían sido rematadas para el pago de contribuciones.

*Noveno.* De las dos fincas adjudicadas a Doña Joaquina Juliá tomó posesión Don Alonso del Río a nombre de la misma, pues aquel fué encargado por Doña Joaquina Julia para practicar las gestiones necesarias en el procedimiento ejecutivo.

*Décimo.* Los bienes adjudicados a Doña Joaquina Juliá fueron vendidos por ésta en 1888 a Don Alonso del Río quien tomó posesión de ellos, poseyéndolos en la actualidad sus herederos.

*Undécimo.* En el año 1879 en que se constituyó la hipoteca, ni antes ni después, había sido hecha la partición de los bienes de la sociedad de gananciales de Don Juan Suro con Doña Encarnación Prado, como así constaba claramente del registro de la propiedad, y lo sabía Don Alonso del Río, quien no obstante saberlo, indujo con palabras o maquinaciones insidiosas a Doña Encarnación Prado a hacer el reco-

nocimiento del crédito hipotecario a favor de Doña Joaquina Juliá para comprar más tarde, empleando también fraude y engaño, y violando un contrato, esos mismos bienes por $6,000 que representaban menos de la cuarta parte de su valor. Y el crédito reconocido no era debido a Doña Joaquina Juliá, pues el reconocimiento sólo tuvo por objeto ampararse Doña Encarnación Prado contra la acción de ciertos acreedores reconocidos por un convenio.

*Duódécimo.* Los demandantes no han vendido a Don Alonso del Río, ni a su sucesión, ni a persona alguna, la parte que les corresponde en los bienes de que se trata por herencia de Don Juan Suro.

*Décimotercero.* Los frutos producidos y debidos producir por la mitad de dichos bienes durante los 25 años en que ilegalmente han sido poseídos por Don Alonso del Río, primero, y después por su sucesión, pueden justipreciarse equitativamente en la suma de $200,000 de los cuales se han visto privados los demandantes.

*Décimocuarto.* Las gestiones practicadas por los demandantes con Don Alonso del Río y su sucesión, para la división de la comunidad de los bienes en cuestión, como gananciales de la sociedad conyugal de Don Juan Suro con Doña Encarnación Prado, y en los que corresponde a los demandantes la mitad por herencia de su padre Juan Suro, han sido infructuosas.

La demanda concluye con la súplica, solicitando que se hagan por sentencia los pronunciamientos ya indicados.

A la demanda opusieron los demandados, sucesores de Don Alonso del Río, las siguientes excepciones previas:

(*a*) No aducir hechos suficientes para determinar una causa de acción.

(*b*) Ser dudosa.

(*c*) Indebida acumulación de acciones.

(*d*) Prescripción de la acción principal de nulidad de constitución de crédito hipotecario por razón de las disposiciones de los artículos 1301 y 1963 del Código Civil Español equi-

valentes a los 1268 y 1864 del Código Civil Revisado, estando prescrita también como consecuencia de ello, la acción de nulidad del procedimiento ejecutivo.

Discutidas dichas excepciones la corte dictó sentencia en agosto 1º. de 1913, por la que declaró sin lugar la demanda con las costas a cargo de la parte demandante por la razón de que la acción de nulidad de reconocimiento del crédito hipotecario estaba prescrita, y en su consecuencia todas las derivadas de la misma, sin que entrara a examinar las demás excepciones propuestas. Y contra esa sentencia interpuso la representación de la parte demandante, recurso de apelación para ante esta Corte Suprema.

Como se ve, por el examen de las alegaciones y súplica de la demanda, varias son las acciones que ejercita la parte demandante, a saber: 1ª., la de nulidad de la escritura pública de reconocimiento de deuda o hipoteca otorgada por Doña Encarnación Prado a favor de Doña Joaquina Juliá en 29 de noviembre de 1879; 2ª., la de nulidad de los procedimientos seguidos para el cobro de dicho crédito hipotecario incluyendo la adjudicación a Doña Joaquina Juliá de los bienes hipotecados, y la venta de ellos por la misma Doña Joaquina a Don Alonso del Río; 3ª., la de división de la comunidad que en dichos bienes tienen la sucesión de Don Alonso del Río, y la Sucesión demandante, entregándose a ésta la participación que le corresponda; y 4ª., la de indemnización por los demandados a la parte demandante, de los frutos producidos y debidos producir por dicha participación.

El tercero y cuarto pronunciamiento de que se deja hecho mérito están subordinados a los dos primeros, pues si éstos no son viables por cualquier razón legal, tampoco lo seran aquéllos. No cabe división de la comunidad e indemnización de frutos producidos y debidos producir, si no prosperan la nulidad del crédito hipotecario reconocido por la escritura de 29 de noviembre de 1879 y la del procedimiento hipotecario seguido para su cobro, pues en una y otra nulidad se basan

la pretendida división de la comunidad e indemnización de los frutos dejados de percibir por la parte demandante.

Discutiremos, pues, la excepción de prescripción alegada únicamente con respecto a las dos primeras acciones.

Fúndase la prescripción alegada en los artículos 1301 y 1963 del Código Civil Español, equivalentes a los 1268 y 1864 del Código Civil Revisado.

El artículo 1268 del Código Civil Revisado dice así:

"La acción de nulidad sólo durará cuatro años.

"Este tiempo empezará a correr:

"En los casos de intimidación o violencia, desde el día en que éstas hubiesen cesado;

"En los de error, o dolo, o falsedad de la causa, desde la consumación del contrato;

"Cuando la acción se dirija a invalidar contratos hechos por mujer casada, sin licencia o autorización competente, desde el día de la disolución del matrimonio:

"Y cuando se refiera a los contratos celebrados por los menores o incapacitados, desde que salieren de tutela."

La duración de la acción de nulidad a que se refiere el artículo transcrito sólo es aplicable, según el artículo anterior, 1267, a los contratos en que concurran los requisitos que expresa el artículo 1228, siempre que adolezcan de alguno de los vicios que los invalidan con arreglo a la ley, siendo aquellos requisitos, consentimiento de los contratantes, objeto cierto que sea materia del contrato, y causa de la obligación que se establezca.

En el contrato de reconocimiento del crédito hipotecario otorgado en 29 de noviembre de 1879, comparece según la alegación 7ª., de la demanda, Doña Encarnación Prado por su propio derecho y por la Sucesión Suro, como madre de los menores hijos herederos de Suro con *patria potestad* sobre ellos, sin que se alegue que los representara en concepto de tutora o curadora de los mismos, pues por más que en esa misma alegación se expresa una y dos veces que Doña Encarnación Prado se tituló curadora *ad litem* de su finado esposo,

lo que no nos explicamos habiendo fallecido Don Juan Suro según la primera alegación de la demanda, por el año 1870, no nos es posible interpretar tal alegación en el sentido de que Doña Encarnación se tituló curadora *ad litem* de los menores hijos de Don Juan Suro. Para dictar resolución sobre excepciones previas, sean éstas cuales fueren, debemos aceptar los hechos tales como se consignan en la demanda, y como se desprenden de las alegaciones, sin apartarnos del sentido literal de éstas. Tenemos, pues, que aceptar como hecho admitido por ambas partes para decidir sobre duración o prescripción de la acción de nulidad de la escritura de 29 de noviembre de 1879, que Doña Encarnación Prado intervino en dicha escritura por sí y en representación de los menores hijos de Don Juan Suro, no en concepto de curadora *ad litem* de los mismos, sino en el de madre con *patria potestad* sobre ellos. Siendo ello así, como la madre, según la legislación de Partidas vigente en la fecha del contrato, no tenía *patria potestad* sobre sus menores hijos, la cual competía únicamente al padre, leyes 2 y 3, título XVII, partida 4ª., surge como consecuencia lógica que los menores hijos de Don Juan Suro no tuvieron representación alguna en la mencionada escritura ni bajo concepto alguno intervinieron en ella, ni por tanto prestaron su consentimiento al contrato por sí o por medio de representación legal. Faltó, pues, en el contrato, por parte de los menores Suro, el consentimiento que debió prestar su representante legal, representante que no aparece existiera, ya que su madre no podía representarlos por falta de tutela o curatela o de patria potestad sobre los mismos, y por falta de semejante requisito la acción de nulidad del contrato no puede regirse por el artículo 1268 del Código Civil, aplicable como hemos dicho antes a los contratos en que concurren todos los requisitos que expresa el artículo 1228. Y corrobora nuestra afirmación el último párrafo del artículo 1268 al disponer que cuando la acción de nulidad se refiera a los contratos celebrados por menores o incapacitados, el término de los cuatro años de duración de dicha acción empezará a

correr desde que salieren de la tutela. Aquí no aparece que haya habido tutela por parte de Doña Encarnación Prado; pero aunque se diera una interpretación extensiva al anterior precepto en el sentido de que el término de cuatro años corra para los menores o incapacitados desde que salieren de la *patria potestad,* resultaría que dicho término no podía empezar a correr desde que los menores hijos salieron de la *patria potestad* de su madre, pues esa *patria potestad* no existía.

Al determinar el artículo 1268 del Código Civil, el día en que comienza a contarse el plazo de cuatro años cuando el consentimiento se hubiere prestado con violencia o intimidación, o con dolo o error, cuando sea falsa la causa del contrato, cuando éste fuere hecho por mujer casada sin licencia o autorización competente o por menores o incapacitados, y omitir la determinación de cómputo para un caso de nulidad como el presente, claramente da a entender no ser aplicable a la acción de nulidad de reconocimiento del crédito hipotecario de que se trata, el término de cuatro años que fija dicho artículo. No regula, pues, dicho artículo, la acción de nulidad del reconocimiento del crédito hipotecario por Doña Encarnación Prado a favor de Doña Joaquina Suro y por tanto la corte inferior incurrió en error al darle aplicación.

Tampoco puede regular dicho artículo la acción de nulidad del procedimiento seguido para el cobro del mencionado crédito hipotecario, fundada esa nulidad en no haber sido oídos los menores hijos de Don Juan Suro en aquel procedimiento.

Reconocemos que esa acción no es la establecida por el artículo 1477 de la antigua Ley de Enjuiciamiento Civil al ordenar que las sentencias dictadas en los juicios ejecutivos no producen la excepción de cosa juzgada, quedando a salvo su derecho a las partes para promover el declarativo sobre la misma cuestión, y que por tanto no es de aplicación estricta la doctrina que hemos establecido al resolver el caso de *Lamb & Cía. en liquidación,* v. *Fantauzzi Hermanos, en liquidación,* 17 D. P. R., 308.

La acción a que se refiere el artículo 1477 de la antigua Ley de Enjuiciamiento Civil estaba reservada a los que han sido partes en el juicio ejecutivo; pero como los demandantes alegan que no fueron citados para el juicio seguido en cobro del crédito hipotecario reconocido por Doña Encarnación Prado, y ese es uno de los fundamentos en que se apoyan para pedir la nulidad de dicho juicio, tendremos que, sea cual fuere el término legal para la prescripción de esa acción, nunca podría ser el de cuatro años a que se refiere el artículo 1268 del Código Civil, como lo revela su simple lectura, y lo convencen las consideraciones aducidas para estimar inaplicables ese mismo artículo a la pretendida nulidad de la escritura de reconocimiento de deuda e hipoteca otorgada por Doña Encarnación Prado a favor de Doña Joaquina Juliá en 29 de noviembre de 1879.

El artículo 1864 invocado también por la parte demandada para sostener la excepción de prescripción, dice así:

"Las acciones reales sobre bienes inmuebles prescriben a los treinta años.

"Entiéndase esta disposición sin perjuicio de lo establecido para la adquisición del dominio o derecho reales por prescripción."

Estimando por los hechos alegados en la demanda que ésta se encamina a obtener por parte de los demandantes una participación dominical en las dos fincas de que se trata, mediante la acción reivindicatoria, no aparece que ésta haya prescrito por el transcurso de los treinta años señalados en el primer apartado del artículo transcrito, pues la posesión de Doña Joaquina Juliá y Don Alonso del Río no pudo comenzar antes de los años de 1887 y 1888, según las alegaciones 8ª., 9ª. y 10ª. de la demanda, y desde esos años hasta el mes de marzo de 1913 en que se radicó la demanda, no pudo haber transcurrido aquel tiempo.

Tampoco es de aplicación el segundo apartado del artículo 1864 por haber adquirido los demandados por prescripción el dominio exclusivo de los bienes en cuestión. Se alega

fraude o mala fe en la posesión, y faltando en ésta el requisito de la buena fe, el término de la prescripción como medio adquisitivo del dominio no es el ordinario de diez o veinte años, sino el extraordinario de treinta, tiempo que aún no ha transcurrido, según dejamos expuesto. No son, pues, aplicables al caso los preceptos legales en que la parte demandada funda la prescripción alegada.

Como los otros motivos de excepción no fueron considerados y resueltos por la corte inferior, preferimos que sean considerados y resueltos por ella antes de someterlos a nuestro estudio y decisión.

Debe revocarse la sentencia apelada y continuarse los procedimientos de acuerdo con esta opinión.

> *Revocada la sentencia apelada debiendo continuarse los procedimientos de acuerdo con la opinión.*

Jueces concurrentes: Sres Asociados Wolf, del Toro y Aldrey.

El Juez Asociado Sr. Hutchison no formó parte del tribunal en la vista de este caso.