GREGORIO A. RIVERA, demandante y apelante, *v.* SUCESIÓN DE BERNABÉ CARABALLO AQUINO, compuesta de sus hijos legítimos JOSÉ, FLOR, TORIBIO y CRUZ CARABALLO GONZÁLEZ, y de su nieto LUIS ANGEL DÍAZ, representado por su padre con patria potestad, LUIS DÍAZ; y JOSÉ CARABALLO PAGÁN, demandados y apelados.

Núm. 7992.—*Sometido:* Marzo 13, 1940. *Resuelto:* Mayo 20, 1940.

*J. C. Rivera,* abogado del apelante; *Francisco Rodríguez Alverio,* abogado de los apelados.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Versa este pleito sobre inexistencia de contrato de compraventa, reivindicación de finca rústica, pago de frutos e indemnización por daños y perjuicios. Fallado en contra del demandante, apeló éste, señalando en su alegato dos errores cometidos a su juicio por la corte de distrito al resolver que debió haberse solicitado previamente la rescisión del contrato de que se trata y al decidir que dicho contrato no fué simulado. La parte apelada no presentó alegato ni compareció a la vista del recurso.

En la demanda se ejercitan tres causas de acción. Para fundar la primera se alega que el demandante es dueño de "un condominio representado por la mitad indivisa de un predio de terreno" de doce cuerdas situado en el barrio de Hato Nuevo, de Gurabo; que por escritura pública de marzo 4, 1933, el causante de los demandados, Bernabé Caraballo, traspasó simuladamente al demandado José Caraballo Pagán, el condominio reclamado en la demanda, sin que mediara precio o consideración y con el único propósito de defraudar a sus acreedores entre los cuales se encontraba el demandante, continuando en su posesión hasta la fecha de su muerte, negándose el demandado José Caraballo Pagán a traspasárselo no obstante saber que le pertenecía.

Como base de la segunda causa de acción se reproducen los hechos pertinentes de la primera y se agrega que la su-

cesión demandada, en primer término, desde que el demandante adquirió el condominio, y en unión del otro demandado José Caraballo Pagán, en segundo término, viene poseyéndolo contra la voluntad del demandante y se niega a entregárselo.

Y para establecer la tercera causa de acción, se reproducen los hechos pertinentes de la primera y se alega que desde agosto 4, 1934, en que el demandante adquirió el condominio, la Sucesión Caraballo primero y en unión del demandado José Caraballo Pagán, después, ha utilizado los frutos naturales e industriales del inmueble cuyo valor razonable asciende a cien dólares, y que además el demandante con motivo de la detentación de su propiedad por los demandados ha sufrido daños y perjuicios que fija en otros cien dólares.

Contestaron los demandados negando todos los hechos en que se fundan las tres causas de acción, con excepción del que se refiere a sus circunstancias personales que aceptaron. Como defensa alegaron que el demandante en tiempo alguno pidió la rescisión del contrato de venta de Bernabé Caraballo a José Caraballo Pagán como acreedor del primero, ni ha obtenido sentencia firme a su favor declarando la nulidad de dicho contrato, sin que pueda alegar colateralmente el fraude o la simulación en este pleito.

Fallado el caso por la Corte Municipal de Caguas donde fué iniciado, fué en apelación a la del distrito, Humacao, celebrándose la vista en enero 18, 1939. La prueba del demandante consistió en su propia declaración, en la de los testigos Julio Santana y Cosme Delgado y en dos copias de escrituras públicas. La de los demandados en las declaraciones de José Caraballo Pagán y Guillermo Díaz.

■ Declaró el demandante a preguntas de su abogado:

"....que se dedica al comercio desde hace muchos años; que conoce a José Caraballo Pagán, el demandado, quien era sobrino del fenecido Bernabé Caraballo; que tuvo un pleito anterior con éste en cobro de dinero, como resultado de relaciones comerciales que existieron entre ambos; que el fallo en el pleito anterior referido fué favorable al demandante, y para hacer efectiva la sentencia em-

bargó a Bernabé Caraballo el condominio a que se refiere este pleito, y lo adquirió en pública subasta en el año 1934; que el Márshal de la Corte Municipal de Caguas le entregó la posesión material de dicho condominio al declarante y éste tomó posesión del mismo, con el conocimiento y el consentimiento de Bernabé Caraballo y de José Caraballo Pagán; que Caraballo Pagán vivía entonces cerca de dicho condominio, en terrenos colindantes de su padre Enrique Caraballo; que después de darle posesión el márshal, procedió a medir las 6 cuerdas que el márshal le había entregado uno o varios días antes; que cuando el márshal le dió posesión de las 6 cuerdas, Caraballo Pagán, en conversación con el demandante y en presencia del márshal y del padre de Caraballo Pagán, Sr. Enrique Caraballo, confesó que aquellas seis cuerdas eran de Bernabé Caraballo; *que como un año antes de la publicación de los edictos para la venta en pública subasta de las 6 cuerdas de terreno, ya sabía el demandante que éstas habían sido traspasadas simuladamente por Bernabé Caraballo a José Caraballo Pagán;* y que Bernabé Caraballo murió en agosto de 1936, y desde entonces Caraballo Pagán empezó a realizar actos de posesión en las 6 cuerdas, pero juntamente con los demás demandados, y así han continuado posteriormente; que Caraballo Pagán sin embargo nunca ha sembrado frutos de ninguna especie en dichas 6 cuerdas; que solamente se le ha visto por ellas desde que murió Bernabé Caraballo, cortando árboles o espeques, y utilizando los frutos naturales del terreno, o cuidando algún ganado allí; que los que han seguido siempre cultivando frutos menores allí son los demás demandados; que José Caraballo Pagán no empezó a pagar las contribuciones de las seis cuerdas objeto de este pleito, hasta después de haber sido resuelto este caso por la Corte Municipal de Caguas, en marzo de 1938, esto es, el único recibo de contribuciones pagado por José Caraballo Pagán a su nombre y faver es el correspondiente al año económico de 1938 a 1939, o sea el del año en curso; que requirió personalmente a Caraballo Pagán en distintas ocasiones antes de radicarse este caso en la Corte Municipal de Caguas, para que le entregara la posesión de dichas seis cuerdas; y que en vida de Bernabé Caraballo le hizo igual requerimiento en distintas ocasiones a éste también; que José Caraballo Pagán, en vida de Bernabé Caraballo, le dijo al declarante que él estaba dispuesto a entregarle el terreno y hasta hacerle una escritura, si Bernabé Caraballo lo disponía así, porque Bernabé Caraballo era en verdad el dueño de las 6 cuerdas; que los demandados todos se han beneficiado por la posesión de las 6 cuerdas en la cantidad de $100.00 por lo menos, y que le han causado además daños civiles ascendentes

a otros $100.00, durante los últimos cuatro años; que el título que tienen las 6 cuerdas en la actualidad no es inscribible.

"Repreguntado por el abogado de los demandados con respecto a la fecha en que había sabido de la venta o traspaso que se alega fué simulado, hecho de las 6 cuerdas por Bernabé Caraballo Pagán, contestó así:

"*Que él hacía tiempo que venía cobrándole a Bernabé Caraballo el importe de un pagaré de $100.00 más o menos, que él había firmado como consecuencia de relaciones comerciales existentes entre ambos; que esas gestiones de cobro las había hecho por escrito y verbalmente a Bernabé Caraballo allá por los años de 1931 y 1932; que después de·dichas gestiones y en vista de que todas resultaban infructuosas, se enteró de que Bernabé Caraballo había traspasado simuladamente las 6 cuerdas a José Caraballo Pagán; que eso fué allá por el año de 1933, pero que no puede recordar con exactitud la fecha; que como un año antes de publicarse el edicto para la venta en pública subasta de las 6 cuerdas que le fueron adjudicadas al demandante, ya éste sabía que Bernabé Caraballo le había hecho el traspaso simulado a José Caraballo Pagán de dichas 6 cuerdas;* que si no hubiese sabido antes del pleito anterior que dicho traspaso era simulado, no hubiera podido nunca presentar esta demanda.

"Repreguntado también por el abogado de la parte contraria ¿por qué no presentó este pleito antes de 1937, en Caguas? el demandante contestó así: Porque esperaba obtener un resultado favorable con las gestiones que venía haciendo con los demandados, para evitarlo, ya que no creía que la temeridad de ellos fuese tan grande, sobre todo después de muerto Bernabé Caraballo, y cuando le tocaba resolverlo a José Caraballo Pagán solamente, quien como dije antes había confesado la simulación del traspaso y su deseo personal de entregarme el terreno."

Santana declaró que trabajó en Gurabo como apremiador de contribuciones y en 1933 apremió a José Caraballo Pagán para el pago de las contribuciones adeudadas por el condominio que se reclama en este pleito y le contestó que el que tenía que pagar las contribuciones por las doce cuerdas completas era Bernabé Caraballo por ser su único dueño; que entonces se dirigió a Bernabé quien le confesó que era cierto lo que José dijo, prometiéndole pagar como en efecto lo hizo.

Y Delgado que era propietario colindante con las tierras aquí reclamadas, que allá por el 1934 el Márshal de la Corte

Municipal de Caguas, Rafael Batalla, le notificó como colindante que el demandante era el dueño de las seis cuerdas de las que le dió posesión en presencia de Bernabé y de José Caraballo; que nadie se opuso a que el demandante tomara posesión; que los frutos percibidos por los demandados valen cien dólares y otros cien las rentas que debió producir el terreno.

Los documentos consistieron en copias de la escritura que ante notario otorgara a nombre de Bernabé Caraballo el Márshal de la Corte Municipal de Caguas en octubre 2, 1934, vendiendo al demandante el condominio de que se trata, embargado en el pleito que siguiera contra Bernabé en cobro de pesos en la dicha corte municipal, y de la escritura cuya simulación se alega y que aparece otorgada en marzo 4, 1933, por Bernabé Caraballo a favor de José Caraballo Pagán, vendiéndole el dicho condominio.

Como ya dijimos la evidencia aportada por los demandados consistió en las declaraciones del demandado José Caraballo Pagán y del testigo Guillermo Díaz.

Dijo el primero contestando a preguntas de su abogado:

"Que el 4 de marzo de 1933 compró a Bernabé Caraballo Aquino la cantidad de 10½ cuerdas de terreno, 6 en un predio y 4 en otro, que le había pagado en diciembre 1º de 1932 en presencia de Guillermo Díaz y Marcelino Hernández; que había pagado $230 por dichos terrenos en 10 billetes de $20, 2 de $10 y 2 de $5; que el demandante Gregorio A. Rivera fué a requerirle para que le entregara la finca objeto de este pleito después que Bernabé Caraballo le hizo la escritura; que el dinero lo reunió vendiendo tabaco, y con el producto de dos animales; que nunca tuvo entrevistas con Gregorio A. Rivera (el demandante); que nunca ha visto al apremiador Julio Santana; que posee la finca desde 1933, y desde entonces viene utilizando los frutos de la misma con los demás demandados."

Y a preguntas del abogado del demandante:

"Que antes y después de hacerse la escritura que se alega simulada ha trabajado siempre como peón y ganado solamente 60 centavos por día, cuando trabaja; que no trabaja en la Central porque prefiere trabajar con propietarios vecinos, como Marcelino Hernán-

dez, con quien ha trabajado y sigue trabajando aunque pocos días cada semana por ser un pequeño propietario el Sr. Hernández; que para convertirse en propietario presentó a la PRRA una solicitud en compañía de Marcelino Hernández, éste como propietario y el declarante como peón permanente, y que eso fué en el año 1935 ó 1936, cuando los propietarios pequeños se estaban acogiendo al beneficio del plan tabacalero; que dichas solicitudes se hacían bajo palabra de honor, en cuanto a la veracidad del contenido de las mismas por un propietario y un peón permanente, y en la solicitud los peones permanentes hacían constar bajo palabra de honor que no eran propietarios; que después la PRRA lo hizo propietario de 3 cuerdas.

"Que es cierto que el demandante le requirió para que le entregara los terrenos objeto de este pleito, y que también es cierto que el Márshal de la Corte Municipal de Caguas en el año 1934 fué a darle al demandante posesión de dichos terrenos sin que el declarante se opusiera, sino que permaneció callado cuando el márshal lo hizo, y que el márshal lo había hecho en presencia de su padre Enrique Caraballo, como colindante también; que reunió el dinero del precio vendiendo tabaco, pero que no recuerda a quién le vendió el tabaco aquel año, ni la fecha en que lo vendió; que el resto del dinero lo hizo vendiendo dos animales o reses a unos matarifes, en Gurabo, pero que no recuerda su nombre, ni la fecha en que se los vendió; que no ha vivido nunca en los terrenos objeto de este pleito porque siempre ha vivido como agregado de su padre Enrique Caraballo, en otros terrenos, en una casita o bohío que tiene construído allí con su familia; que Bernabé Caraballo siguió pagando las contribuciones de los terrenos objeto de este pleito como si no se hubiese otorgado escritura alguna entre el otorgante y Bernabé Caraballo, por los años de 1932–33, 1933–34, 1934–35, 1935–36, 1936–37 y 1937–38.

"Que había pagado por primera vez las (contribuciones) del año 1938–39, y que había hecho esto después de fallar la Corte Municipal de Caguas a su favor este mismo pleito, y que él debe las contribuciones anteriores a Bernabé Caraballo; que ha visto al apremiador Julio Santana en Gurabo, en el pueblo, pero no en su casa en las Masas; que Bernabé Caraballo era tío carnal del declarante José Caraballo Pagán."

Y Díaz declaró, a preguntas del abogado de los demandados, "que conoce a José Caraballo Pagán y conoció a Ber-

nabé Caraballo Aquino; que presenció una transacción habida entre Bernabé Caraballo Aquino y José Caraballo Pagán, el 1º de diciembre de 1932; que vió cuando Caraballo Pagán le entregó $230 a Bernabé Caraball〉 Aquino como precio de 10½ cuerdas de terreno que le iba a comprar; que conoce a Luis Díaz, esto es, a su hijo y cuñado de José Caraballo Pagán.''

Repreguntado si tenía algún interés en este asunto, contestó:

''Que no tenía ningún interés, pero que era cierto que su hijo Luis Díaz casó con Isabel Caraballo González, hoy fenecida, con quien había procreado un hijo que figura como demandado aquí con el nombre de Luis Angel Díaz, pero que el declarante no tenía interés en el pleito a pesar de esto.''

Tomó la corté bajo su consideración el caso y lo resolvió por sentencia de febrero 16, 1939. De su opinión transcribimos lo que sigue:

''La teoría del demandante es de que Bernabé Caraballo Aquino, con el único propósito de defraudar y perjudicar a sus acreedores, fraudulentamente hizo el traspaso de la mitad de la finca que se describe en la demanda, de lo cual, según se desprende de la prueba del propio demandante, tenía éste conocimiento un año antes de haber obtenido por venta judicial la posesión civil de la misma finca. Se solicita en la demanda que se declare inexistente el contrato celebrado entre Bernabé Caraballo Aquino y José Caraballo Pagán por falta de causa o consideración y porque el mismo se hizo con el único propósito de defraudar y perjudicar a sus acreedores. Con respecto a este primer aspecto, opina la Corte que el demandante debió haber solicitado la rescisión de dicho contrato en una acción independiente a ésta de conformidad con el art. 1243 del Código Civil. No habiendo entablado esta acción corresponde a este Tribunal determinar si hubo o no contrato entre Bernabé Caraballo Aquino y José Caraballo Pagán. La prueba del demandante demuestra que era de conocimiento público el contrato de compraventa celebrado entre Bernabé Caraballo Aquino y José Caraballo Pagán. La prueba asimismo demuestra que el demandante en ningún momento ha realizado actos de posesión material sobre el predio que adquiriese según la escritura núm. 19 de venta judicial otorgada ante el Notario don

Luis Morales Contreras. Aparece de las mismas alegaciones de la demanda que el causante Bernabé Caraballo Aquino y el demandado José Caraballo Pagán estuvieron siempre su posesión de la finca. La prueba del demandante tiende a demostrar que José Caraballo Pagán no pagó nada por la finca que compró a Bernabé Caraballo Aquino y que carecía de medios para ello. Se ha demostrado que José Caraballo Pagán trabajaba en la finca de Bernabé Caraballo Aquino, que sembraba tabaco y que tenía dos o tres cabezas de ganado. Se ha demostrado asimismo que para los años 1932 y 1933 José Caraballo Pagán cosechó tabaco y lo vendió a buen precio. Todo ello nos lleva a la conclusión de que José Caraballo Pagán reunió recursos suficientes para la compra de la finca objeto de esta demanda. En la prueba del demandante hay un hecho que pudiera, en cierto sentido, levantar sospechas con respecto al derecho de propiedad que José Caraballo Pagán tuviese sobre la finca que compró. Es la situación de que se acogió al plan tabacalero de la PRRA, pero este hecho por sí solo no destruye la posibilidad de que José Caraballo Pagán hubiese tenido fondos suficientes para comprar a su tío la mitad de una finca de doce cuerdas. De que todos continuasen viviendo en la finca y la disfrutasen colectivamente, es costumbre entre nuestros campesinos. A veces la ley no puede destruir lo que ha sido costumbre por siglos. En la unidad de una familia campesina predomina, como regla invariable, la autoridad de los mayores. No es extraño que Bernabé Caraballo Aquino, después de haber vendido su terreno a su sobrino, continuase conjuntamente con éste realizando actos de posesión. De la misma prueba del demandante se infiere que la venta no fué simulada. De ello se tenía conocimiento público y especialmente el demandante Gregorio A. Rivera, quien declara que desde el año anterior a la venta judicial, ya sabía que Bernabé Caraballo Aquino había vendido la finca a su sobrino. De ello también tenía conocimiento Julio Santana, testigo del demandante, quien declara que fué a cobrarle las contribuciones a José Caraballo Pagán, que pagó más tarde su tío, pero que muerto éste, empezó a satisfacerlas inmediatamente el sobrino. La parte demandante no ha ofrecido prueba suficiente, a nuestro juicio, para demostrar que no hubo causa o consideración en el contrato de compraventa celebrado entre Bernabé Caraballo Aquino y José Caraballo Pagán. Según aparece de la escritura núm. 19 de venta judicial, otorgada por el márshal don Rafael Batalla Córdova a favor de don Gregorio A. Rivera ante el notario don Luis Morales Contreras, en la ciudad de Caguas, a 2 de octubre de 1934, fué en el mes de mayo de 1934 que el demandante radicó su acción en cobro de dinero

contra Bernabé Caraballo Aquino. Ya hacía más de un año que se había realizado el contrato de compraventa entre Bernabé Caraballo Aquino y José Caraballo Pagán.''

Procederemos primero al estudio del segundo señalamiento de error o sea el que se refiere a la apreciación de la prueba.

La simple lectura de la evidencia aportada por ambas partes deja la impresión de la simulación del contrato. Su estudio detenido reafirma la impresión.

El error de la corte sentenciadora al apreciarla es manifiesto. Por ejemplo, dijo dicha corte:

"Se ha demostrado que José Caraballo Pagán trabajaba en la finca de Bernabé Caraballo Aquino, *que sembraba tabaco y que tenía dos o tres cabezas de ganado.* Se ha demostrado asimismo *que para los años 1932 y 1933 José Caraballo Pagán cosechó tabaco y lo vendió a buen precio.* Todo ello nos lleva a la conclusión de que José Caraballo Pagán reunió recursos suficientes para la compra de la finca objeto de esta demanda.'' (Itálicas nuestras.)

Y todo lo que manifestó el propio demandado, único que declaró sobre ese extremo, fué:

Contestando a preguntas de su abogado, ''que el dinero *lo reunió vendiendo tabaco,* y con el producto *de dos animales.''*

Respondiendo al abogado del demandante: ''Que antes y después de hacerse la escritura que se alega simulada ha trabajado siempre como peón y ganado solamente 60¢ por día, cuando trabaja; . . . *que para convertirse en propietario* presentó a la PRRA una solicitud en compañía de Marcelino Hernández, éste como propietario y el declarante como peón permanente, . . . que dichas solicitudes se hacían bajo palabra de honor, en cuanto a la veracidad del contenido de las mismas por un propietario y un peón permanente, y en la solicitud los peones permanentes hacían constar bajo palabra de honor que no eran propietarios.''

Y contestando otra vez a su abogado: *''Que reunió el dinero del precio vendiendo tabaco, pero que no recuerda a quién le vendió el tabaco aquel año, ni la fecha en que lo*

*vendió;* que el resto del dinero lo hizo *vendiendo dos animales o reses* a unos matarifes, en Gurabo, pero que no recuerda su nombre, ni la fecha en que se los vendió.'' (Itálicas nuestras.)

Carecen, pues, de base hechos esenciales que la corte dió por probados para llegar a la conclusión que le llevara a resolver que el contrato existió. Y así en otros extremos. Por el contrario la prueba del demandante es persuasiva y completa, terminante.

■ También fué cometido el primer error señalado. Siendo el contrato simulado, esto es, no existiendo contrato válido alguno, no era necesario que se pidiera por el demandante su rescisión por haberse celebrado en fraude de acreedores o su nulidad de acuerdo con el artículo 1252 y siguientes del Código Civil, ed. 1930.

En el caso de *González Rodríguez* v. *Fumero,* 38 D.P.R. 556, 565, esta propia corte, por medio de su Juez Asociado Sr. Texidor, se expresó como sigue:

''En los casos de simulación de contrato, es evidente que falta el consentiminto, y en general, falta la causa. Y entonces, como ha dicho Manresa, el caso es el más claro de inexistencia.

''El Tribunal Supremo de España, en sentencia de fecha 30 de noviembre de 1909, pág. 501 et seq., tomo 116, Jurisprudencia Civil, ha dicho lo que sigue:

'' 'Considerando que no es dable confundir un contrato simulado con un contrato nulo o rescindible, toda vez que la simulación significa indudablemente por su propia naturaleza la inexistencia del contrato, al contrario de lo que acontece respecto de los segundos; en los que, supuesta su realidad y certeza, es obligado examinar las condiciones de su celebración para resolver acerca de la procedencia de la nulidad o rescisión, examen absolutamente improcedente por contradictorio cuando el contrato no ha existido, ya que de la inexistencia no se pueden deducir más consecuencias jurídicas que las que necesariamente se derivan de esta misma inexistencia, o sean los procedentes cual si no se hubiese intentado siquiera la celebración de tales supuestos contratos;

'' 'Considerando que esto sentado, como la Audiencia de Cáceres estima justificado que los de que se trata fueron simulados, es decir

que no existieron, habiendo sido realmente fingidos para burlar por este procedimiento los derechos de los nietos reclamados al morir la abuela doña María del Rosario Fernández de Aguilar y González, es manifiesto que cualquiera que sea la propiedad con que el Tribunal sentenciador declara la rescisión de los contratos discutidos, como hay que partir del hecho de la simulación o inexistencia de los mismos por no impugnarse en el recurso, ninguna aplicación tienen las reglas y preceptos que regulan la materia de la rescisión ni aun los de la misma nulidad, sino solamente las consecuencias que el mismo Tribunal deduce, cuales son las que, como queda expuesto, producen el hecho culminante de la inexistencia, o sean las de que los bienes sobre que versa la cuestión del pleito no salieron realmente del poder de la supuesta vendedora, y que por lo mismo constituyen parte del haber hereditario a su fallecimiento.'

"En el caso de que se trata había unos pretensos contratos de compraventa, con el verdadero objeto de traspasar a una persona gratuitamente bienes que, en el futuro podían contarse como herencia de la cedente. No hubo ni una transmisión efectiva de las fincas, ni un precio real y cierto. De las escrituras aparecía la compraventa, como aparecían la transmisión del título y la entrega del precio. La realidad era otra, y contraria a las manifestaciones de los otorgantes. De aquí la simulación.''

■ Y años antes se había resuelto en el caso de *El Pueblo* v. *Dimas,* 18 D.P.R. 1061, 1062, que: "La doctrina legal de que cuando se ejercita la acción reivindicatoria contra personas que están en posesión de la cosa objeto del pleito en virtud de un título que se tenía por legítimo, es preciso que antes se pida la nulidad de éste, sólo tiene aplicación cuando la nulidad produce la acción, pero no cuando el derecho de reivindicar es independiente de ella.''

Véanse además los casos de *Sucesión Suro* v. *Sucesión Prado,* 21 D.P.R. 241; *Oliver et al.* v. *Oliver,* 23 D.P.R. 181, y *Amy* v. *Sucesión Verges,* 33 D.P.R. 372.

Si la venta de Bernabé Caraballo a su sobrino el demandado José Caraballo Pagán hecha constar en la escritura de marzo 4, 1933, fué simulada, que es lo mismo que si no hubiera existido, bien pudo ignorarla el márshal municipal cuando en la ejecución de la sentencia dictada contra Bernabé

Caraballo vendió al demandante el condominio de que se trata que lo era en una finca que jamás salió de la propiedad del deudor, y lo puso en la posesión material del mismo, debiendo en su consecuencia reconocerse a dicha venta todos sus efectos, entre ellos el de reivindicar lo adquirido del que lo está detentando.

Aun cuando el pleito en cobro de pesos se iniciara como dice el juez sentenciador en su opinión después de otorgada la dicha escritura de marzo 4, 1933, debe siempre prosperar la reivindicación porque aquí el demandante no comparece a pedir la rescisión de un contrato otorgado en fraude de acreedores, si que a reclamar como suyo un condominio en una finca que le fué vendido en la ejecución de una sentencia que obtuvo en contra del dueño de la misma y de cuyo condominio se le puso en posesión en presencia y sin protesta del dicho dueño y del supuesto comprador anterior, el demandado José Caraballo Pagán.

En cuanto a la reclamación de frutos y daños y perjuicios, no consideramos la evidencia aportada suficiente. Ni el demandante, ni el otro testigo que declaró sobre el particular, aportaron dato específico alguno para sostener o explicaron siquiera el fundamento de sus conclusiones, y siendo ello así no hay base para fijar las cantidades a reintegrar.

*Debe, por virtud de todo lo expuesto, revocarse la sentencia recurrida y dictarse otra declarando que el contrato que aparece en la escritura núm. 87 otorgada en Caguas el 4 de marzo de 1933 ante el notario Andrés Mena Latorre es ineficaz, por simulado, en cuanto al condominio reclamado se refiere, y ordenando a los demandados que entreguen y dejen a la libre disposición del demandante el dicho condominio, sin que haya lugar a la condena de devolución de frutos y daños y perjuicios solicitada, con imposición de las costas a los demandados incluyendo la suma de cincuenta dólares para honorarios de abogado.*